UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RAMON PEGUERO RAMIREZ,
A# 073 200 096, aka RAMON
PEGUERO, DIN # 07-B-1650,[1]

                                Petitioner,           DECISION AND ORDER

-vs-
                                                20-CV-6018 (CJS)

JEFFREY SEARLS
in his official capacity as
Administrator, Buffalo
Federal Detention Facility,[2]

                                Respondent.

_____

INTRODUCTION

Ramon Peguero Ramirez ("Petitioner"), a citizen of Venezuela, is detained at the Buffalo Federal Detention Facility ("BFDF") as a criminal alien subject to a final order of removal.   Petitioner, who is not appealing his removal order or opposing his removal in any way, has now been in the custody of the Department of Homeland Security ("DHS") for approximately fifteen (15) months, since March 1, 2019.   In this action filed pursuant to 28 U.S.C. § 2241, Petitioner argues that his continued detention is unreasonable and unlawful, based, *inter alia*, on the Supreme Court's decision in *Zadvydas v. I.N .S.*, 533 U.S. 678, 121 S.Ct. 2491 (2001) ("*Zadvydas*").   The Court disagrees, and denies the application for writ of habeas corpus.

_____

[1] The record indicates that Petitioner has used these names interchangeably. *See, e.g.*, ECF No. 8-1 at pp. 2, 10, 11, 20, 21.
[2] Searls is the only proper respondent in this action. *See, Gutierrez v. Barr*, No. 20-CV-6078-FPG, 2020 WL 2059845, at *3 (W.D.N.Y. Apr. 29, 2020) ("[T]he only proper respondent is Jeffrey Searls, Officer in Charge at the Buffalo Federal Detention Facility. See ECF No. 5 at 20. As the "person with direct control" over Petitioner's detention, *id.*, he is the proper respondent given Petitioner's requested relief. *See Hassoun v. Sessions*, No. 18-CV-586, 2019 WL 78984, at *7 (W.D.N.Y. Jan. 2, 2019) ("The majority view in the Second Circuit requires the immediate custodian, generally the prison warden, to be named as a respondent in core immigration habeas proceedings—i.e., those challenging present physical confinement." (quotation omitted)).").

1

BACKGROUND

The facts concerning Petitioner's case are generally not disputed, except insofar as Petitioner disputes the likelihood that he will be removed in the foreseeable future.

> [Petitioner] is a 35-year-old native and citizen of Venezuela.   On July 7, 2008, an Immigration Judge ordered [Petitioner] be removed from the United States. On September 18, 2008, the Board of Immigration Appeals ("BIA") affirmed that decision. [Petitioner] is currently subject to a final order of removal issued against him in 2008, and has not since challenged his removal order.   On March 1, 2019, [Petitioner] was taken into custody by the Department of Homeland Security ("DHS"). He has since been detained [at the BFDF].

ECF No. 1 at pp. 1–2 (citations omitted). Pending his removal, Petitioner has been mandatorily detained as a criminal alien.[3] *See*, Petition (ECF No. 1) at ¶ ¶ 18, 20 ("Mr. Peguero is detained pursuant to 8 U.S.C. § 1231(a)(2), which requires the detention of certain criminal aliens during the 'removal period' following an order of removal. . . . Mr. Peguero is subject to 8 U.S.C. § 1231 because he has a final order of removal issued against him on account of a prior criminal offense.").

On January 9, 2020, Petitioner filed the subject Petition.   The Petition essentially argued that the Court should grant a writ of habeas corpus, since Petitioner had been in DHS custody awaiting removal for more than six months. *See*, Petition (ECF No. 1) at ¶ 38 ("Under the *Zadvydas* standard of six months, Mr. Peguero's detention has become

---

[3] "On January 19, 2007, [Petitioner] was convicted of Attempted Criminal Possession of a Weapon in violation of New York Penal Law ("NYPL") § 110-265.03.   [Petitioner] was sentenced to 18 to 36 months in New York State prison. While in state custody, Mr. Peguero was placed into removal proceedings before the Ulster Immigration Court in Napanoch, New York. On July 7, 2008, Mr. Peguero was ordered removed from the United States to Venezuela.   On September 18, 2008, the BIA affirmed the order of removal. Upon his release from state custody, Mr. Peguero was not removed from the United States, but was instead released on parole. In 2016, Mr. Peguero was found to have been in violation of a condition of parole, and was remanded to state custody to serve out the maximum sentence of his 2008 conviction.   On March 1, 2019, Mr. Peguero was again released from state prison and taken into custody by DHS]." Petition (ECF No. 1) at ¶ ¶ 28–32 (paragraph numbers and citations omitted).

unreasonably prolonged. The burden now shifts to Respondents to show that Mr. Peguero's detention is both justified and that he is likely to be removed in the imminent future."). The Petition did not allege that there was any reason why DHS could not remove him; it only alleged that DHS had not yet done so.

On March 30, 2020, prior to the government's time to file a response to the Petition, the government filed an affidavit, pointing out that a travel document has been obtained for Petitioner, and that Petitioner's removal had been scheduled for March 20, 2020. *See*, Kazmierski Decl., ECF No. 9 at ¶ 4 ("DHS is in possession of a travel document for Petitioner, and travel arrangements were made for his removal on March 20, 2020."). The Government indicated, though, that Petitioner's removal had been postponed due to Covid-19 travel restrictions, but that Petitioner's removal would be re-scheduled once such restrictions were lifted. *See, id.* at ¶ 5 ("Due to the COVID-19 travel restrictions, Petitioner's removal has been postponed and will be re-scheduled once travel restrictions are lifted.").

On April 3, 2020, the government filed its Answer and Return to the Petition. (ECF No. 8). In pertinent part, the government reiterates that it has a travel document for Petitioner, and that it intends to remove Petitioner to Venezuela as soon as Covid-19 travel restrictions will permit. On this point, the government has submitted a supplemental affirmation, indicating that such removal "has been re-scheduled for June 2020." Kazmierski Suppl. Decl., ECF No. 9 at ¶ 4.

On April 22, 2020, Petitioner filed a Reply (ECF No.10). In pertinent part, the Reply asserts that Covid-19 travel restrictions are not the "real barrier" to Petitioner's removal, but that, the real barrier is the alleged breakdown of diplomatic relations between the United States and Venezuela. *See*, Reply, ECF No. 10 at p. 5 ("[T]he failed U.S. diplomatic relationship with Venezuela is the real barrier to Mr. Peguero's removal."). As

support, Petitioner cites news publications suggesting that removals to Venezuela are unlikely at the present time.

## DISCUSSION

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir.2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas v. Davis*, 533 U.S. at 687 (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings and pending removal following the entry of a final order of removal are governed by two separate provisions of the INA—respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241 (8 U.S.C. § 1231), which authorizes detention of aliens after the issuance of a final removal order.

Petitioner is confined under the latter statute, which provides authority to detain an alien once the decision on removal is made, and the removal order becomes final.   In that regard, INA § 241(a) requires the Attorney General to accomplish removal within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory. *See* INA § 241(a)(2) ("During the removal period, the Attorney General shall detain the alien."). The statute also authorizes the Attorney General to continue detention of certain criminal aliens—like Petitioner—who have been determined to be a threat to the community or a risk of flight, beyond the expiration of the ninety-day removal period. *See*, INA § 241(a)(6).[4]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling the INA's apparent authorization of indefinite post-removal-order detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process. The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699–700. Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts ...." *Id.* at 701.

> After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in

---

[4]*See*, 8 U.S.C.A. § 1231(a)(6) ("An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).").

confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

In the instant case, Petitioner is not entitled to habeas relief because he has not shown that there is no significant likelihood of his removal to Venezuela in the reasonably foreseeable future.   As discussed earlier, the Petition alleged merely that Petitioner's Due Process rights were being violated because he had been in post-removal-order custody for more than six months.   The Petition did not allege that that there was anything preventing DHS from removing Petitioner to Venezuela.   In response, the government indicated that it has obtained a travel document for Petitioner and that it was scheduled to remove him to Venezuela in March, but that it became unable to remove Petitioner as planned due to travel restrictions related to the Covid-19 Pandemic.   The government indicates, though, that it is now planning to remove Petitioner in June 2020, provided that it can do so consistent with any Covid-19 travel restrictions.   Accordingly, the government rebutted Petitioner's claim.

Now, however, in a reply submission, Petitioner asserts that the government is lying, and that the "real barrier" to his removal is "the failed U.S. diplomatic relationship with Venezuela."   In this regard, however, Petitioner cites only to sources that were available prior to the date he filed the Petition, and without any explanation for why he failed to make this argument in the Petition.   Accordingly, the Court declines to consider the argument. *See*, *Pineda v. Shanahan*, 258 F. Supp. 3d 372, 380, n. 11 (S.D.N.Y. 2017) ("To the extent that the petitioner intended to challenge the constitutionality of the October 17, 2016 decision by the Acting Field Office Director from Immigration and Customs Enforcement to continue detention, he has waived that argument by raising it for the first time in his reply brief.").

Of course, if it were demonstrated that the government was being disingenuous as to the reason for the delay in removing Petitioner, the Court would not hesitate to impose whatever sanctions it could impose.   At this time, however, Petitioner has not made such a showing.   Nevertheless, in the event that the government does not remove Petitioner in June, 2020, and Petitioner remains in custody, Petitioner may file a new petition.

## CONCLUSION

The Petition is denied, and this action is dismissed.   The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).   Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.   The Clerk of the Court is directed to amend the caption of this action as shown above, and to terminate this action.

SO ORDERED.

Dated: Rochester, New York
          May 27, 2020                              ENTER:


CHARLES J. SIRAGUSA
United States District Judge